IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

JIM HOOD, Attorney General for the
State of Mississippi, *ex rel.*, STATE OF
MISSISSIPPI,                                                                          PLAINTIFF,

VS.                                                            CIVIL ACTION NO. 2:04CV347-P-B

MADDOX FOUNDATION, a
Mississippi Non-Profit Corporation,
ROBIN G. COSTA, as a Director and
President of the Maddox Foundation,
and TOMMYE MADDOX WORKING,
as a Director of the Maddox Foundation,                              DEFENDANTS.

## MEMORANDUM OPINION

This matter comes before the court upon Plaintiff's Motion to Remand [7-1]. Upon exhaustive consideration of the motion and the responses filed thereto the court is prepared to rule.

### I. FACTUAL BACKGROUND

At its most basic level, the case at hand involves a dispute over $100 million that at one time resided in Davidson County, Tennessee in the form of a charitable trust ("Maddox Foundation Trust") created in 1968 by Dan W. Maddox and Margaret H. Maddox. The trust was established "exclusively for charitable, religious, scientific, literary, and/or educational purposes, either directly, or by contributions to organizations duly authorized to carry on charitable, religious, scientific, literary, or educational activities." Though the trust documents never required the money to be spent in Tennessee for Tennesseans, at an early stage there was an understanding that Mr. Maddox wanted the money to focus on the people of Davidson County.

1

Dan and Margaret Maddox died in a boating accident in 1998. Thereafter, the assets from their respective estates funneled into the trust.

From 1968 to 1998, the trust was amended in various ways ten times. Essentially, by 1998 Robin Costa and Tommye Maddox Working were the sole trustees, Costa possessing the most power over the assets. After the death of Mr. and Mrs. Maddox, Costa and Working agreed to move the trust from Tennessee to Mississippi. They both employed a law professor at Vanderbilt to help them effectuate that goal. The result was their purported creation of a Mississippi nonprofit corporation named the Maddox Foundation in 1999. Both Working and Costa agreed to move the situs of the trust to Mississippi. They then moved all of the trust's assets to the Maddox Foundation nonprofit corporation in Mississippi and dissolved the Maddox Foundation Trust. This turned Costa and Working from trustees to directors of the corporation. Some time later, Working resigned her position as a director and moved back to Tennessee.

Some five years after the creation of the corporation, Working began efforts to wrest control of the Maddox Foundation money from Costa because she believes Costa has misappropriated and/or mishandled the Maddox Foundation's $100 million. For example, Working argues that Costa purchased the Memphis River Kings hockey team and the Memphis Xplorers football team in contravention of the Maddox Foundation articles of incorporation and bylaws which do not provide for spending money on professional sport teams. As a result, Working, through the District Attorney General of Davidson County, caused to be filed a suit in the Probate Court of Davidson County whose primary goals include appointing a receiver to take control of the Maddox Foundation's assets. In the Tennessee suit, Working and Tennessee argue that the moving of the Maddox Foundation Trust's situs from Tennessee to Mississippi was void

2

*ab initio*, thus causing the Maddox Foundation nonprofit corporation to have been formed improperly, because contrary to Tennessee Code Annotated § 35-1-122 neither Costa nor Working ever obtained permission from the courts of Tennessee to change situs. In this Tennessee litigation, Costa and the Maddox Foundation argue that § 35-1-122 does not require permission from a Tennessee court to change the situs of a trust formed in Tennessee and that therefore the Mississippi nonprofit corporation was and is formed correctly. As such, Costa and the Maddox Foundation argues, the $100 million cannot be moved back to Tennessee.

While the Tennessee suit was still pending, on November 18, 2004 the Attorney General of Mississippi, Jim Hood, filed a complaint in the Chancery Court of DeSoto County, Mississippi on behalf of the State of Mississippi against the Maddox Foundation corporation and its two directors Robin G. Costa, who also serves as the Maddox Foundation's president, and Tommy Maddox Working. The vehicle through which Hood filed that action was Mississippi Code Annotated § 79-11-155(2) which provides in pertinent part:

> A corporation's power to act may be challenged in a proceeding against
> the corporation to enjoin an act where a third party has not acquired
> rights. The proceeding may be brought by the Attorney General ....

After Mississippi filed its Amended Complaint in the Chancery Court of DeSoto County on November 22, 2004, two claims were levied against the defendants.

First, the State of Mississippi seeks a declaratory judgment affirming that the trust whose assets formed the Maddox Foundation in Mississippi properly and effectively changed its situs from Tennessee to Mississippi in 1999 – contrary to the ruling by the Probate Court of Davidson County, Tennessee in the case of *State of Tennessee ex rel. Working, etc., et al. v. Costa, etc., et.al.*, No. 04P-1430 and contrary to any future opposite rulings by Tennessee courts. More

3

specifically, the State of Mississippi seeks a declaratory judgment that the trustees of the trust (Costa and Working) did not violate Tennessee Code Annotated § 35-1-122 when they relocated the trust to Mississippi in 1999. Alternatively, the State of Mississippi seeks a declaratory judgment that even if the change of situs from Tennessee to Mississippi were deemed improper, said action would not provide a viable legal avenue for attacking the validity of the relocation five years after the fact since the Tennessee parties (Working and the District Attorney General for Davidson County, Tennessee) would be estopped by the doctrines of laches, estoppel, and waiver.

Second, pursuant to the Mississippi Nonprofit Corporation Act, Mississippi Code Annotated § 79-11-155(2), and Mississippi Rules of Civil Procedure 57 and 65, the State of Mississippi seeks a preliminary and permanent injunction prohibiting the defendants (the Maddox Foundation and its two directors Costa and Working) or their "agents, servants, employees, attorneys, successors, assigns, and persons in active concert or participation with them who receive actual notice of such restraining or injunctive order (specifically including, but not limited to, the so-called 'Special Master or Receiver or Special Fiduciary' that the plaintiffs [Working and Tennessee] in the Tennessee litigation ... have moved the Tennessee trial court to appoint)," from moving any assets of the Maddox Foundation, as a Mississippi nonprofit corporation, from Mississippi to Tennessee, or from otherwise taking any further steps to "return" the Maddox Foundation or any of its assets to Tennessee, absent further orders of this court. The State of Mississippi also seeks to enjoin the so-called Special Master from intervening or otherwise participating in the management of the affairs of the Maddox Foundation.

As stated above, these two causes of action are levied through the auspices of Mississippi

4

Code Annotated § 79-11-155(2) which ostensibly allows the Attorney General of Mississippi to seek an injunction to enjoin a Mississippi corporation from improper acts.

On December 17, 2004 Defendant Tammy Maddox Working alone removed the instant case from the Chancery Court of DeSoto County to federal court arguing federal diversity jurisdiction because the amount in controversy involve over $75,000 and, despite the current alignment of parties, there is diversity of citizenship because the State of Mississippi is not a real party in interest and neither the Maddox Foundation nor Robin Costa, Mississippi residents both, are true defendants. Rather, Working argues, the State of Mississippi through its Attorney General Jim Hood has filed the instant suit for the primary benefit of the Maddox Foundation and Robing Costa. Accordingly, Working seeks realignment of the parties to reflect that the real dispute, according to Working, is between Mississippi residents and the Tennessee resident Working. As an alternative basis for federal jurisdiction, Working argues that under 28 U.S.C. § 1331, this court has federal question jurisdiction because it arises under the Eleventh Amendment of the U.S. Constitution. This is so, Working argues, because Mississippi's instant suit seeks to prevent the District Attorney General from litigating in the courts of Tennessee.[1]

The plaintiff has filed the motion at bar to remand the case to the Chancery Court of DeSoto County.

## II. DISCUSSION

28 U.S.C. § 1441(a) permits removal to federal court of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Under §

---

[1] Throughout the briefs, Working's federal question argument has been largely abandoned and undeveloped. Accordingly, because the argument appears attenuated, the court concludes that Working has not met her burden in proving federal question jurisdiction.

5

1441, "[a] defendant may remove a state court action to federal court only if the action could have been originally filed in the federal court." *Aaron v. National Union Fire Ins. Co.*, 876 F.2d 1157, 1160 (5th Cir. 1989). The burden of proving federal jurisdiction is upon the party seeking removal. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2000). Removal jurisdiction must be strictly construed because it implicates important federalism concerns. *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997).

Of course, the citizens upon whose diversity the court is granted federal jurisdiction must be real and substantial parties to the controversy. *Corfield v. Dallas Glen Hills, LP*, 355 F.3d 853, 858 (5th Cir. 2000). "[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Id*. Furthermore, "[t]here must be an actual, substantial controversy between citizens of different states to sustain diversity. ... To do that a court must 'look beyond the pleadings, and arrange the parties according to their sides in the dispute." *Zurn Indus., Inc. v. Acton Constr. Co., Inc.*, 847 F.2d 234, 237 (5th Cir. 1988) (citing *City of Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63 (1941)). "The objective of *City of Indianapolis* realignment is only to insure that there is a bona fide dispute between citizens of different states." *Id.* "The determination of the 'primary and controlling matter in dispute' ... is to be determined by plaintiff's principal purpose in filing suit." *Id*.

Working strenuously argues that the State of Mississippi, the sole plaintiff in this action, is merely a nominal party and is not a real party in interest since neither the trust documents nor the Maddox Foundation's articles of incorporation and bylaws require the $100 million to be spent in or for Mississippi. Of course, the same is true for Tennessee if it is indeed the case that

the Maddox Foundation Trust is determined to still exist in Tennessee. It is true that the Maddox Foundation Trust contains a statement encouraging use of the money for Davidson County. It is also true that the corporate mission statement for the Maddox Foundation corporation states that use of the money shall focus on Northwest Mississippi. Nevertheless, it is not disputed that neither operative set of documents, whether of the trust or the corporation, require the money to be spent in or for the benefit of a particular state.

However, with respect to who has a real or substantial interest in the $100 million, the very existence of the fierce litigation waged both here and in Tennessee clearly evinces Mississippi *and* Tennessee's substantial interest in what is a great deal of money. Whatever legal form in which the $100 million exists, whether the Maddox Foundation Trust (Tennessee) or the Maddox Foundation corporation (Mississippi), each state's interest in that money is plain to see given said money is to be spent on certain charities that would benefit the citizens of both states, neither state, or any state. Thus, the court concludes that in the present case, Mississippi is a real party in interest and will not be disregarded in determining the existence of federal diversity jurisdiction *vel non*.

This leaves the question of realignment. According to Working, neither the Maddox Foundation nor Costa are "real" defendants because Mississippi through its Attorney General is seeking to benefit not only Mississippi but also the Maddox Foundation and Costa. Indeed, Costa has never filed an Answer to the Complaint. What is more, the Maddox Foundation has not only not fought Mississippi's prayer for a declaratory judgment and injunction, but has clearly evidenced its approval.

This is besides the point. The question before this court is first and foremost whether it

has jurisdiction. Matters of merit do not fall within that determination. The simple fact is that the State of Mississippi through its Attorney General has sought relief from the Chancery Court of DeSoto County, Mississippi. Mississippi Code Annotated § 79-11-155(2) gives the Attorney General that right. Even though it is probable that § 79-11-155(2) is seldom used, and even though there is no Mississippi case law elucidating the contours of the statute, it is still a valid and operative statute passed by the Mississippi legislature. Given the nature of the statute, which allows the Attorney General of Mississippi to seek to enjoin a corporation from acting improperly, it is natural and necessary that the parties in this case be aligned as they currently are. That is, in order to enjoin a corporation from doing something supposedly improper – here, from moving the $100 million back to Tennessee – it is natural that such an injunction would apply to the corporation and its directors. Since the corporation and one of the directors are Mississippi residents, and the plaintiff is the State of Mississippi, there is incomplete diversity of citizenship and thus no federal diversity jurisdiction.

It should also be noted that if this court were to realign the parties according to Working's arguments, the very procedural posture of this case would be destroyed and the merits of the case would be rendered moot because the vehicle used to file the instant suit is predicated upon § 79-11-155(2).

### III. CONCLUSION

For the reasons discussed above, the Plaintiff's Motion to Remand [7-1] should be granted. The court's duty in deciding whether to remand is to concentrate solely on whether this court has jurisdiction, not upon the merits of the underlying case. Given there is no federal diversity jurisdiction, whether or not the State of Mississippi can or should obtain a declaratory

judgment that the Maddox Foundation nonprofit corporation was properly formed in Mississippi and whether or not the State of Mississippi can or should obtain an injunction to prevent anyone from "returning" the $100 million assets of the Maddox Foundation (trust or corporation) to Tennessee are questions left solely to the Mississippi state courts with respect to the instant case. Accordingly, this case should be remanded to the Chancery Court of DeSoto County, Mississippi from whence it came. An Order shall issue forthwith,

**THIS DAY** of July 14, 2005.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE